**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
CITADEL ENERGY PRODUCTS LLC,   :
                               :
        Plaintiff,             :
                               :
    v.                         :  Civil Action No. 04-1550 (JR)
                               :
ENERGY INFORMATION             :
ADMINISTRATION, et al.,        :
                               :
        Defendants.            :
```

**MEMORANDUM**

Plaintiff sues under the Freedom of Information Act seeking certain data collected by the Energy Information Administration (EIA) about private underground natural gas storage in the United States.  Because the requested material is privileged commercial information, EIA's motion for summary judgment must be granted.

**Background**

EIA publishes weekly and monthly reports listing aggregate underground natural gas storage at the national level and in each of three regions of the United States.[1]  See http://tonto.eia.doe.gov/oog/info/ngs/ngs.html (Weekly Natural Gas Storage Report); http://www.eia.doe.gov/oil_gas/natural_gas/data_publications/natural_gas_monthly/ngm.html (Natural Gas Monthly).  The monthly

---

[1] The Department of Energy (of which EIA is a part) was also named as a defendant, and Pacific Gas and Electric Company has intervened in this case as a defendant.

reports are based on Form EIA-191 surveys that all gas storage companies in each region must return.  The weekly reports are estimates based on Form EIA-912 surveys that a sample of companies in each region must return.  Responses to both forms are required by law.  See 15 U.S.C. § 772(b).  Some companies make their gas storage data publicly available.  Other companies guard such information zealously, presumably filing the survey forms only because they are required to do so.  EIA takes care to guard the survey data.  E.g., First Decl. of Elizabeth Campbell at ¶ 16 (survey processing and estimation system confined to one small room in part for security reasons).  Although the weekly sample includes data provided by fewer than half of all companies, the sampling is weighted toward larger companies, so that more than 90 percent of all stored gas is represented.  See generally, Compl. Ex. D (Methodology for EIA Weekly Underground Natural Gas Storage Estimates), available at http://tonto.eia.doe.gov/oog/info/ngs/methodology.html.  The identities of respondents to Form EIA-912 do not appear from the record to be public, and EIA rotates its Form EIA-912 sample panel regularly.  See id.

     Plaintiff's FOIA request is for the aggregate weekly totals, by region, and for the aggregate monthly totals, by region, for those companies that are part of the weekly sample.  They seek this data "[i]n order to make a more accurate and

useful comparison of weekly and monthly data." Pl.'s Initial Freedom of Information Req. at 2.  Defendants have interposed FOIA Exemption 4, arguing, inter alia, that plaintiff has requested confidential commercial information.

## Analysis

FOIA Exemption 4 covers "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  5 U.S.C. 552(b)(4); Nat'l Parks & Conservation Ass'n v. Morton, 498 F.2d 765 (D.C. Cir. 1974).

> Information is privileged or confidential if it is not the type usually released to the public and is of the type that, if released to the public, would cause substantial harm to the competitive position of the person from whom the information was obtained. . . . In order to show the likelihood of substantial competitive harm, it is not necessary to show actual competitive harm. Actual competition and the likelihood of substantial competitive injury is all that need be shown.

Gulf & W. Indus. v. U.S. 615 F.2d 527, 530 (D.C. Cir. 1979); see also McDonnell Douglas Corp. v. U.S. Dept. of the Air Force, 375 F.3d 1182, 1187 (D.C. Cir. 2004).  There appears to be no dispute that the information requested is "commercial" and that the companies providing survey information face actual competition. There may be some question as whether the data has been "obtained from a person" if it has been aggregated by a government agency, see 5 U.S.C. § 551(2) (defining "person" to include "an individual, partnership, corporation, association, or public or private organization other than an agency"), but what EIA seeks

to protect is the individual company data that it says could be extracted from the aggregate data.  Thus, for purposes of this discussion, the data is treated as having been "obtained from a person."  The dispositive question is whether release of the requested data would pose a "likelihood of substantial competitive injury."

**1. Could aggregate data be used to estimate individual company gas storage information?**

Protecting the confidentiality of individual data contained within aggregate totals is a complex subject.  See, e.g., Defs.' Reply Exs. 10, 11 (Office of Management and Budget Report on Statistical Disclosure Limitation Methodology; Energy Information Agency Standards Manual). In this case, EIA has followed standard procedures in assessing the likelihood that individual company data could be calculated or closely estimated using aggregate data, explaining the process with a detailed set of sample calculations.  E.g., Compl. Ex. H at 4-5, First Decl. of Elizabeth Campbell; Second Decl. of Elizabeth Campbell. Plaintiff challenges that analysis and offers its own set of sample calculations.  See Pl.'s Mot. Summ. J. at 14-18.  As defendants persuasively show, however, plaintiff's sample calculations are based on a flawed understanding of defendants' calculations and are inherently less reliable because they do not use actual survey data.  See Second Decl. of Elizabeth Campbell at ¶¶ 19-24.

Defendants do not need to show that a competitor could certainly infer individual data from aggregate data.  Their burden is only to show that there is a "likelihood of substantial competitive injury."  Defendants have shown a likelihood that individual data can be inferred from aggregate data.  That is a necessary (but not sufficient) part of their overall burden.

**2. Would the release of individual company data cause competitive injury?**

Defendants have provided substantial support for the intuitive answer to that question, which is yes.  Elizabeth Campbell, who oversees defendants' survey collection and processing, explains:

> If the names and natural gas inventories of [companies in the survey] were publicly known, those companies' ability to meet their obligations would be revealed.  A company with small amounts of storage gas relative to its obligations would be negatively impacted in a current competitive sense because it would be at a clear negotiating disadvantage to those who would sell it gas to meet those obligations.  Similarly, a company in a flush position would be hard pressed to obtain the prices it was seeking if buyers knew that the company had large quantities to sell.

First Decl. of Elizabeth Campbell at ¶ 22.

The submitters of commercial information are entitled to be heard as well.  See, e.g., Pub. Citizen Health Research Group v. Nat'l Insts. of Health, 209 F. Supp. 2d 37, 50 (D.D.C. 2002); Exec. Order No. 12,600, 52 Fed. Reg. 23781 (June 23, 1987) (agencies must inform submitters of requests for confidential commercial information and "give careful consideration" to any

objections).  Here, Pacific Gas & Electric details exactly why the release of the requested information would lead to competitive harm, see Pac. Gas & Elec. Mot. to Intervene at 4-6, and several other gas companies have indicated that releasing similar data would cause them competitive harm.  See Second Decl. of Elizabeth Campbell at ¶¶ 26-28.  It is true that some gas companies and the Federal Energy Regulatory Commission have favored making similar gas storage information publicly available in order to improve the efficiency and transparency of the gas market overall, see Pl.'s Reply at 11-12, but that is a policy matter for the legislative and executive branches.

**Conclusion**

      Defendants have properly invoked FOIA Exemption 4 in refusing to produce the information requested by plaintiffs.  That inquiry is dispositive, so there is no need to address the other legal and factual issues presented in the briefs.  Summary judgment will be granted to defendants.  An appropriate order accompanies this memorandum.


                                    JAMES ROBERTSON
                            United States District Judge